**Frank LaSCOLA, Plaintiff–Appellant,**

v.

**US SPRINT COMMUNICATIONS,
Defendant–Appellee.**

No. 90–2505.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1991.
Decided Oct. 24, 1991.

560

Lawrence M. Cohen (argued), Jeffrey S. Goldman, Allison Blakley, Paul A. Olsen, Paul R. Gary, Fox & Grove, Chicago, Ill., for plaintiff-appellant.

Gregory J. Schroedter (argued), Jeffrey A. Blevins, Charles G. Albert, Bell, Boyd & Lloyd, Chicago, Ill., Bernard A. Bianchino, Kansas City, Mo., for defendant-appellee.

Before WOOD, Jr., CUDAHY and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant Frank LaScola brought this diversity action against defendant-appellee US Sprint Communications Company ("US Sprint"), alleging breach of contract, fraud, and violation of the duty of good faith and fair dealing by US Sprint. US Sprint moved for summary judgment, and the district court granted US Sprint's motion. LaScola appeals the district court's decision, and we now consider the propriety of that decision.

## FACTUAL BACKGROUND

US Sprint is a partnership engaged in the business of selling long distance telephone services, data transmission services, video teleconferencing services, and other telecommunications services. US Sprint emerged in 1986 as the successor in interest to a company called ISACOMM and its corporate parent US Telecom.

In 1984, LaScola worked for American Satellite as a telecommunications sales executive. That year, he entered into discussions with ISACOMM employees about working for ISACOMM. Executives of ISACOMM told LaScola that ISACOMM was an excellent company comprised of "a bunch of straight shooters"; that the company offered a lucrative compensation plan; and that LaScola would receive the commissions due upon sale of an account. ISACOMM offered LaScola the position of sales executive, which he accepted. He began work on June 1, 1984, and worked for ISACOMM for over two years.[1] After ISACOMM and its parent corporation, US Telecom, created a national fiberoptic network—US Sprint[2]—LaScola became an employee of US Sprint. He remained in the same job position, with the same salary and responsibilities.

During his employment, LaScola received a salary, as well as commissions pursuant to written compensation plans. The compensation plans for Senior National Account Managers, which LaScola signed, provided for payment of commissions in two installments: part of the sales commission would be paid when the sale was made and the purchase order received by US Sprint, and part would be paid when the service was installed.[3]

Beginning in late 1984 and early 1985, ISACOMM established contact with Sears, Roebuck & Company ("Sears") to discuss the possibility of making a telecommunications services deal. A division of Sears, the Sears Communications Network ("SCN"), was responsible for the handling

---

1. In 1985, LaScola's job position changed from sales executive to account manager. In January 1986, LaScola became a Senior National Account Manager. During most of his employment with US Sprint and its predecessors, Gary Nelson, regional manager of US Sprint's Great Lakes Region, served as LaScola's supervisor. Nelson reported to the director of US Sprint's central marketing area, who was supervised by David Dorman, senior vice president of US Sprint's National Accounts Division. Richard Smith, president of US Sprint's National Accounts Division, acted as supervisor to Dorman.

2. US Sprint Communications Company was formed as a New York General Partnership in

July 1986. In January 1989, US Sprint Communications Company Limited Partnership, a Delaware Limited Partnership formed November 14, 1988, took over the business assets and liabilities of the general partnership.

3. The compensation plan also established the following regarding termination of employment:

An employee who voluntarily or involuntarily terminates shall be paid for commission payments documented and due as of the date of termination according to this Plan. A terminated employee will not be eligible for any remaining balance of commissions related to any account.

of Sears's communications services. LaScola served as account manager for Sears's accounts in the Chicago area, and therefore played a significant role in negotiations with SCN.

In July 1986, SCN executed an agreement to purchase telecommunications services from US Telecom/US Sprint in a Bulk Services Agreement ("BSA"). The BSA provided for purchase of US Sprint telecommunications services by Sears over a specified period of time (or pilot period) at a total contract value of $78 million.[4] SCN requested that this business relationship be kept highly confidential, and US Telecom/US Sprint agreed. After the execution of the BSA, in early August 1986, Nelson assigned LaScola to the Sears account exclusively and removed him from his other accounts. LaScola received standard commissions for his sales of telecommunications products and services to Sears.

In September 1986, US Sprint began efforts to design and sell services to Electronic Data Services ("EDS"), the telecommunications section of General Motors ("GM"). Because of the significance of this potential transaction, US Sprint and GM/EDS decided to maintain strict confidentiality regarding the negotiations.

On September 30, 1986, LaScola traveled to Atlanta, Georgia, for a meeting with representatives of US Sprint and SCN. LaScola and two US Sprint employees from the West Coast marketing region met for dinner at Chequers Bar & Grill, a public restaurant near the hotel in which LaScola was staying. During the dinner in the crowded restaurant, LaScola and his dinner companions mentioned both the GM/EDS account and the Sears account. US Sprint executives also dining at Chequers testified that they overheard LaScola mention the GM/EDS and Sears accounts.

Two of the executives reported to Richard Smith, president of US Sprint's National Accounts division, how they had overheard LaScola in this breach of confidentiality. David Dorman, vice president of that division, also was informed about the incident and Smith instructed Dorman to explore the situation. Eventually it was determined that LaScola should be discharged from his position at US Sprint. On October 8, 1986, Mary Elzy, director of US Sprint's Human Resources, and Nelson met with LaScola in Chicago. They discussed with him how the US Sprint executives had heard him discussing confidential company information. Elzy and Nelson then told LaScola that he was being terminated from US Sprint.

Before the October 31, 1986, effective date of the termination, LaScola appealed the termination decision internally. On November 5, 1986, US Sprint rescinded the discharge decision and offered to reinstate LaScola to the position he held when discharged. US Sprint informed LaScola that in the reinstated position he would not retain the Sears account.[5]

LaScola denies disclosure of confidential information. Instead, he contends that US Sprint terminated his employment because it did not want to pay him the considerable commissions to which he claims he would have been entitled from the Sears account ($600,000).

In November 1986, LaScola began employment with one of US Sprint's competitors, MCI Communications, Inc. On February 19, 1987, he filed his original complaint and subsequently, on March 25, 1988, filed

---

**4.** Selby Shaver, an SCN executive in voice communications, testified that to his knowledge, the BSA did not require Sears to buy particular products or services from US Sprint. He noted that if Sears did not meet the minimum commitment under the BSA, Sears would owe US Sprint the money. However, according to Shaver's testimony, where US Sprint's service

> either by our testing or their [US Sprint's] own admission did not meet the standard of service that would be acceptable to Sears, then the dollar volume of that service that

couldn't be installed because of service problems would negate or go against that $500,000 commitment. So we could have met the dollar commitment on the contract and not have used one nickel's worth of service from US Sprint.

Deposition of Selby Shaver at 106.

**5.** At oral argument, US Sprint attributed this removal of LaScola from the Sears account to US Sprint already having established a replacement on the Sears account.

a first amended complaint. On June 6, 1990, the district court entered summary judgment in favor of US Sprint on counts I, IV and V of the first amended complaint. (*LaScola v. US Sprint Communications*, 739 F.Supp. 431 (N.D.Ill.1990)). Count I of the first amended complaint alleges that US Sprint breached the covenant of good faith and fair dealing, implied in all Illinois contracts, by discharging LaScola. Count IV claims that US Sprint made fraudulent misrepresentations to LaScola before and during his employment at US Sprint. Count V asserts a breach of LaScola's employment contract with US Sprint for terminating LaScola without just cause. LaScola contends that the district court erred in granting summary judgment for US Sprint. We do not agree and we affirm the district court's decision.

## ANALYSIS

### SUMMARY JUDGMENT

■ It is well-established that "we review *de novo* a district court's decision to grant a motion for summary judgment and apply the same standard as that employed by the district court." *DeBruyne v. Equitable Life Assurance Soc.*, 920 F.2d 457, 463 (7th Cir.1990). The burden is on the movant to show "that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law," and "[a]ny doubt as to the existence of a genuine issue for trial is resolved against the moving party." *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1477 (7th Cir.1990).

■ As we noted recently, "although we view the evidence and all reasonable inferences that can be drawn from it in the nonmovant's favor, it is not enough for the nonmovant merely to raise factual arguments that cast 'some metaphysical doubt as to the material facts.'" *Baker v. Elmwood Distributing, Inc.*, 940 F.2d 1013,

1017 (7th Cir.1991) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). The nonmovant "has the burden of presenting specific facts to show that there is a genuine issue of material fact." *New Burnham*, 910 F.2d at 1477. That is, "that the record contains a bona fide, bipolar dispute as to some dispositive factual issue 'that properly can be resolved only by a finder of fact.'" *Baker*, at 1017 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). With these factors in mind, we review LaScola's claims.

### Breach of Employment Contract

In Count V of the first amended complaint, LaScola contended that US Sprint breached its employment contract with him by firing him without the "just cause" LaScola claims was necessary. The district court granted summary judgment for US Sprint on this count because it determined that LaScola, who was admittedly employed for an indefinite period, was an employee-at-will and could be terminated at will, without cause.

■ A general rule in the employment relationship context is "that an employment relationship without a fixed duration is terminable at will by either party." *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 489, 106 Ill.Dec. 8, 15, 505 N.E.2d 314, 317 (1987).[6] *Duldulao* does point out, however, that most courts, including the Illinois Supreme Court, "interpret the general 'employment-at-will rule' as a rule of construction, mandating only a presumption that a hiring without a fixed term is at will, a presumption which can be overcome by demonstrating that the parties contracted otherwise." *Id.* at 489, 106 Ill.Dec. at 16, 505 N.E.2d at 318. In an employment contract with no definite duration, there are three exceptions to the rule

---

**6.** Illinois law applies in this diversity case. In the motion for summary judgment, US Sprint argued that summary judgment should be entered in its favor regardless of whether Illinois or Georgia law applies to the case. LaScola insisted that Illinois law applies, and because

LaScola completely ignored Georgia law, the district court determined that LaScola waived any argument that Georgia law would provide a different result. Thus, the district court applied Illinois law. The parties do not contest this decision on appeal.

of at-will termination: "(1) the firing contravenes public policy; (2) the employee is terminated in violation of particular conditions stated by the parties; and (3) 'Under certain circumstances, a clear and definite oral agreement for permanent employment based on sufficient consideration may be enforced' even where the agreement does not mention a definite term." *Gordon v. Matthew Bender & Co., Inc.*, 562 F.Supp. 1286, 1294 (N.D.Ill.1983) (quoting *Titchener v. Avery Coonley School*, 39 Ill.App.3d 871, 350 N.E.2d 502, 507 (2nd Dist.1976)). *See also Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 525, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985).

■ LaScola argues that his situation falls within the third exception.[7] He maintains that the statements made in soliciting him to work for US Sprint established a policy and practice of treating employees fairly.[8] In return for what LaScola terms US Sprint's fairness "guarantees," LaScola states that he accepted a pay reduction and signed a noncompetition agreement. Therefore, he claims, there existed clear and definite terms and consideration sufficient to create a just-cause employment contract.

In *Wilder v. Butler Mfg. Co.*, 178 Ill. App.3d 819, 821, 128 Ill.Dec. 41, 42, 533 N.E.2d 1129, 1130 (3d Dist.1989), the employee, Wilder, argued that she was prom-ised permanent employment in her oral employment contract with the employer. She testified that she was told essentially the following: the employer would always have a woman in supervision and so long as she produced for the company she would have a job; she would " 'never have to anticipate a layoff"; and she would never be laid off. *Id.* The Illinois court determined that "[t]he majority of these statements upon which Wilder bases her claim of a lifetime employment contract are merely informal expressions of goodwill and hope that naturally occur between a prospective employer and a prospective employee in an interview situation." *Id.* at 822, 128 Ill.Dec. at 43, 533 N.E.2d at 1131. As an example of such informal expressions, the court cited how Wilder was "allegedly told that she would never have to *anticipate* a layoff and as long as she did her job properly she would retain her position." *Id.* The court considered the statements to be "optimistic expressions about the future," and noted that "Illinois courts have found that such statements are insufficient to establish an oral contract for permanent employment." *Id.*

■ To overcome the at-will presumption, LaScola needs to establish "[c]lear and definite language ... as courts should not rewrite a contract by imposing

---

7. Promissory estoppel is another theory which LaScola uses in his effort to rebut the at-will presumption. Employing the four elements for recovery under promissory estoppel, he claims that he has provided sufficient evidence of US Sprint's employment promises, that he could reasonably rely on those promises, that he actually relied on those promises, and that injustice will result if US Sprint is not estopped from denying LaScola commissions and employment. *See Yardley v. Yardley*, 137 Ill.App.3d 747, 754, 92 Ill.Dec. 142, 147, 484 N.E.2d 873, 878 (1st Dist.1985) (four elements to satisfy for recovery under promissory estoppel theory).

While LaScola did argue below that he relied on the representations by US Sprint, he did not present to the district court the four elements for promissory estoppel that he has alleged on appeal. This failure to raise the promissory estoppel issue before the district court results in waiver of the issue on appeal. *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990).

8. The statements to which LaScola refers are set out in the first amended complaint, in the memorandum opposing US Sprint's motion for summary judgment and again in his appellate brief. In the first amended complaint, LaScola contended that when he was interviewed for the ISACOMM position, Dorman promised "a lucrative compensation plan," and that Dorman and others explained that the company "was committed to conducting business in accordance with the law and the highest ethical and moral standards." In opposing US Sprint's motion for summary judgment and in the brief on appeal, LaScola mentioned other statements upon which he relied: that his commission income would more than cover the drop in his base pay; that Sprint's managers were "straight shooters" who "played fair"; that all of the accounts in the Chicago area would be LaScola's and that job advancement would be certain; and that when he sold an account, he would receive the commissions due.

an obligation where none is intended." *Koch v. Illinois Power Co.*, 175 Ill.App.3d 248, 252, 124 Ill.Dec. 461, 464, 529 N.E.2d 281, 284 (3d Dist.1988), *appeal denied*, 124 Ill.2d 555, 129 Ill.Dec. 150, 535 N.E.2d 915 (1989). It is not for the jury to determine definiteness, since "the question of construction of a contract, where material facts are not disputed, is a question of law." *Yorke v. B.F. Goodrich Co.*, 130 Ill.App.3d 220, 223, 85 Ill.Dec. 606, 608, 474 N.E.2d 20, 22 (2d Dist.1985).

US Sprint does not dispute that the statements cited by LaScola were made, but instead contends that the statements were simply not clear and definite enough to establish a contract for just-cause termination. As with *Wilder*, the statements were "informal expressions of goodwill and hope" that occur between a recruit and an employer. *Wilder*, 178 Ill.App.3d at 822, 128 Ill.Dec. at 43, 533 N.E.2d at 1131. There was no express mention of "cause" for termination in the alleged statements, and no indication of what LaScola's complaint describes as "implicit" promises that LaScola would be employed for an indefinite period and would not be terminated except for cause.

Like the district court, we find that the statements upon which LaScola relied did not contain the clear and definite language as required to overcome the at-will presumption. When fired by US Sprint, LaScola was an employee-at-will.

*Implied Covenant of Good Faith and Fair Dealing*

An obligation to deal in good faith is implied in all Illinois contracts. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 589 (7th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). As *Gordon* explains, "[s]uch an obligation 'is in aid and furtherance of other terms of the agreement of the parties.' It does not create an independent cause of action." 562 F.Supp.

at 1290 (quoting *Murphy v. Am. Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983)).

An employment-at-will relationship "gives the employer the right to terminate the employment at any time. Therefore, it is incongruous to imply a covenant [the implied covenant of good faith and fair dealing] which restricts that right." *Harrison v. Sears, Roebuck & Co.*, 189 Ill.App.3d 980, 993, 137 Ill.Dec. 494, 502, 546 N.E.2d 248, 256 (4th Dist.1989). Having determined that LaScola was an employee-at-will, the district court concluded that the duty of good faith and fair dealing, implied in every contract as a matter of law, did not create an independent cause of action in LaScola's case and that he could not prevail on his claim that US Sprint breached the covenant by discharging him.

US Sprint contends that it had the right to terminate LaScola for a good reason, bad reason or no reason. LaScola counters that the implied duty of good faith and fair dealing should have restricted US Sprint's right in that regard, because a cause of action for a breach of the covenant of good faith and fair dealing exists when there is opportunistic deprivation of commissions through termination. By failing to consider US Sprint's obligation to deal fairly and in good faith with respect to LaScola's commissions, LaScola claims, the district court granted summary judgment for US Sprint without ruling on a key allegation in the complaint.[9] LaScola also asserts that US Sprint violated the duty to discharge in good faith that LaScola argues was inherent in the noncompetition agreement between LaScola and US Sprint.

The Illinois courts do not allow for a cause of action based on discharge from employment-at-will, and "have shown no disposition to abandon the at will doctrine except in carefully defined areas" such as violation of public policy. *Gordon*, 562

9. The first amended complaint states, "Defendant US Sprint acted in violation of the implied covenant, when, without reason, they terminated LaScola based upon reasons which were wholly fabricated," and "Defendant US Sprint's decision to terminate plaintiff was done willfully, maliciously and in bad faith and for the improper reason of denying him commissions which he had duly earned."

F.Supp. at 1290, 1292. *See Hugo v. Tomaszewski*, 155 Ill.App.3d 906, 911, 108 Ill.Dec. 562, 565, 508 N.E.2d 1139, 1142 (5th Dist.1987) (court declined to expand discharged at-will employee's right to a cause of action to include cause of action for employer's breach of implied covenant of good faith and fair dealing). "[S]atisfactory or acceptable performance theoretically could be implied in every employment contract"; however, "[s]uch an end-run around the at will doctrine would eviscerate it altogether, and the Illinois courts do not seem inclined to do so." *Gordon*, 562 F.Supp. at 1292.

■ We recognize, as noted in *Gordon*, that "[t]he law seems fairly clear that an employee at will may not be deprived of commissions (in large part 'earned' prior to separating from the employer) by a discharge made in bad faith and intended to deprive the employee of the commissions." *Id.*, 562 F.Supp. at 1297. In *Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429, 438 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988), this court stated, "no one ... doubts that an *avowedly* opportunistic discharge is a breach of contract, although the employment is at-will." *Jordan* adds that "[a]n employer may be thoughtless, nasty, and mistaken. Avowedly opportunistic conduct has been treated differently, however." *Id.* Nonetheless, as discussed in *Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 990, 81 Ill.Dec. 156, 170, 466 N.E.2d 958, 972 (1st Dist.1984), in a series of Illinois employee termination cases,

> a discharged employee brought suit against a former employer alleging that the employer was inspired by an improper motive, such as a desire to deprive the employee of health or pension benefits, and therefore the termination was in bad faith. The court, in each instance, recognized the implied covenant of good faith could limit an employer's otherwise unrestricted discretion in terminating an at-will employment contract. However, in every case, the employee failed either to properly plead or to prove that the employer had acted in bad faith or out of an improper motive.

We now review LaScola's bad faith claim, keeping in mind not only *Jordan* and *Gordon*, but also the reluctance of the Illinois courts to eviscerate the at-will doctrine.

■ LaScola charges that US Sprint breached the implied covenant of good faith and fair dealing because it exploited its agreement to pay commissions for sales made by firing LaScola after he procured the Sears account but before most commissions came due. According to LaScola, US Sprint owes him $600,000 in commissions from his efforts on the Sears BSA, and the discharge was part of US Sprint's scheme to deprive him of these commissions. LaScola argues that US Sprint terminated him for blatantly pretextual causes and in so doing breached its obligation to refrain from opportunistic discharge.

*Gordon* does explain that a cause of action for a breach of good faith may exist when it is "predicated on a contract right with independent validity," that being the "right to receive commissions for work performed." 562 F.Supp. at 1297 n. 5. The key phrase in that *Gordon* footnote is "commissions *for work performed.*" *Id.* (emphasis added). The compensation plan applicable to LaScola provided that part of the commission was payable upon sale of a service, and part upon installation. The BSA constituted an agreement for Sears to pay US Sprint a certain minimum amount for telecommunications services, whether it bought the US Sprint service or not, so long as it found the services to be acceptable. If Sears found the service unacceptable, the minimum commitment amount would be reduced by the dollar volume of that service. US Sprint vice president, Dorman, testified that the BSA itself was not a commissionable event. This appraisal is supported by all parties having agreed that LaScola was entitled to and was paid standard commissions for all the sales he made to Sears between July 1, 1986, and when he left US Sprint.

LaScola received the commissions for sales under the BSA to which he was entitled according to the compensation plan. Applying the opportunistic discharge theo-

ry expressed in *Jordan* and *Gordon,* even were we to find that the discharge was in bad faith, we still cannot find that plaintiff was wrongfully deprived of commissions— LaScola has not presented the specific facts regarding his entitlement to $600,000 under the BSA rather than the typical commissions for sales and installations, to show that a genuine issue of material fact existed. His discharge did not deprive him of commissions since he needed sales and installations under the BSA in order to be entitled to the commissions. Being unable to apply the opportunistic discharge theory, we need not determine whether the discharge was in bad faith because, as an at-will-employee, LaScola could be discharged for any reason—good or bad. LaScola is not entitled to any additional commissions based on his breach of the implied covenant of good faith argument.

 LaScola contends that the common law procuring cause rule provides an independent basis upon which he may recover the allegedly wrongfully deprived commissions. The district court employed the rationale explained in *Technical Representatives, Inc. v. Richardson–Merrell, Inc.,* 107 Ill.App.3d 830, 833, 63 Ill.Dec. 668, 671, 438 N.E.2d 599, 602 (1st Dist.1982), that "[u]nder the [procuring cause] rule, a party may be entitled to commissions on sales made after the termination of a contract if that party procured the sales through its activities prior to termination. The rule applies, however, only if the contract does not expressly provide when commissions will be paid." The district court found that it was undisputed that LaScola received commissions under the compensation plan, and as we noted above, the record comports with that finding. LaScola received commissions for sales made under the BSA between July 1986 and his discharge. We agree with the district court's finding that the compensation plan applied to the Sears situation, and that the procuring cause rule does not apply to LaScola.

 LaScola also claims that the implied covenant of good faith and fair deal-

ing was included in the noncompetition covenant of the confidential information agreement between US Sprint and LaScola. LaScola cites *Rao v. Rao,* 718 F.2d 219 (7th Cir.1983), in support of his assertion that a restrictive covenant "unquestionably includes a covenant of good faith and fair dealing." *Rao* holds that a restrictive covenant not to compete is not enforceable when an employee is terminated in bad faith and without good cause. 718 F.2d at 224.[10] *Rao* does not, however, establish a cause of action, independent of this post-employment restrictive covenant cause of action, for bad faith discharge of an at-will-employee. As US Sprint points out, whether or not the confidentiality agreement constrained LaScola's employment opportunities after his discharge is not relevant to the nature of his employment relationship with US Sprint, nor the duties owed to him within that relationship.

We are not persuaded by LaScola's attempts to show that a breach of the implied duty of good faith and fair dealing occurred in his employment situation with US Sprint. The district court's decision to grant summary judgment for US Sprint on this count was appropriate.

*Fraudulent Misrepresentations by US Sprint*

On the issue of fraudulent misrepresentations, LaScola argues that factual questions existed for jury determination, and therefore, summary judgment was inappropriate. LaScola claims that US Sprint representatives fraudulently manipulated him with factual misrepresentations, both in 1984 when persuading him to join US Sprint, and in 1986 when convincing him to give up other accounts to work solely on Sears.

 Illinois law requires a plaintiff to prove the elements of fraudulent misrepresentation by clear and convincing evidence. *West v. Western Cas. and Sur. Co.,* 846 F.2d 387, 393 (7th Cir.1988). The elements to be proved are as follows:

---

**10.** The noncompetition agreement in this case was not even enforced, as LaScola commenced employment with US Sprint's competitor, MCI, very soon after his discharge.

(1) the representation must be a statement of a material fact, rather than a mere promise or opinion; (2) the representation must be false; (3) the person making the statement must know or believe that the representation is false; (4) the person to whom the representation is made must reasonably rely on the truth of the statement; (5) the statement must have been made for the purpose of causing the other party to affirmatively act; and (6) the reliance by the person to whom the statement was made led to his injury.

*Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1347 (7th Cir.1983). The district court concluded that no reasonable factfinder could find for LaScola on, at least, the first and fifth elements of fraudulent misrepresentation. We agree.

 As the district court stated, LaScola cannot prove the first element of fraud because the representations made to LaScola were promises or opinions, not material facts. The statements LaScola mentions—the company has a lucrative compensation plan; the executives are "straight shooters"; US Sprint is ethical and committed to conducting business in accordance with the law—are too general and difficult to substantiate to be considered statements of fact.

*West* provides that "[a] statement that merely expresses an opinion or that relates to future or contingent events, rather than past or present facts, does not constitute an actionable representation." *West*, 846 F.2d at 393. In considering whether a statement is one of fact or of opinion, we examine "all the facts and circumstances of a particular case." *Id.* We then

> focus on the circumstances surrounding the representation to determine whether the plaintiff may have justifiably relied on the opinion as though it were a statement of fact. Among the relevant factors in such a case are the access of the parties to outside information and the relative sophistication of the parties.

*Id.* (citation omitted). It is undisputed that these statements were made to LaScola when he was being recruited by the company. As we noted earlier, such comments are common between a prospective employer and employee and are informal expressions of goodwill. *See Wilder*, 178 Ill. App.3d at 822, 128 Ill.Dec. at 43, 533 N.E.2d at 1131. The statements made to LaScola in the prospective employment situation were not fact; rather, they were merely statements of opinion and they "cannot qualify as fraudulent misrepresentations." *Spiegel v. Sharp Electronics Corp.*, 125 Ill.App.3d 897, 902, 81 Ill.Dec. 238, 242, 466 N.E.2d 1040, 1044 (1st Dist. 1984).

Likewise, Nelson's representations to LaScola in 1986, while LaScola was working for US Sprint, also were opinions or predictions of future performance, not statements of fact. Nelson indicated that LaScola's switch solely to the Sears account would not harm his earnings from commissions, but instead the Sears commissions would make the others look like "chicken feed." LaScola had been in the telecommunications sales arena long enough to realize that Nelson could not be certain of the commissions to be made off of a certain account—he could only opine or predict. LaScola's assertions regarding Nelson's statements and the preemployment statements fail to prove the first element of fraud by clear and convincing evidence, and there is no genuine issue of material fact that would require determination by a jury.

LaScola fails to prove the fifth element of fraudulent misrepresentation as well. The fifth element requires that the statement have been made for the purpose of causing the other party to affirmatively act. LaScola contends that he relied on the allegedly false statements to his detriment. The problem with LaScola's reliance argument is that Nelson did not have to make such statements about the Sears commissions to cause LaScola to accept the account. The compensation plan gave US Sprint the right to transfer LaScola to dif-

ferent accounts without notice.[11] Nelson's statements were not meant to cause LaScola to affirmatively act and transfer accounts, but they most likely were made in order to make the change more pleasant for LaScola.

After considering the evidence presented by LaScola regarding the fraudulent misrepresentations, and drawing inferences in his favor, we find that LaScola cannot prove the required elements of fraud by clear and convincing evidence.

## CONCLUSION

For the reasons stated above, the decision of the district court granting summary judgment for US Sprint is

AFFIRMED.

---

**11.** The compensation agreements of 1986 provide: US Telecom/US Sprint "reserves the right to make any adjustments or revisions to products or services, base salaries, incentives, territories, or any other matter affecting an individu- al's employment at any time without prior notice."