INDEMNIFIED CAPITAL
INVESTMENTS, SA.,
Plaintiff–Appellant,

v.

R.J. O'BRIEN & ASSOCIATES, INCOR-
PORATED, John W. O'Brien, Robert J.
O'Brien, Jr., et al., Defendants–Appel-
lees.

No. 93–1223.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1993.

Decided Dec. 30, 1993.

John E. Dolkart (argued), Chicago, IL, for plaintiff-appellant.

Lloyd A. Kadish (argued), Kadish & Associates, Arthur W. Hahn, and Ronald S. Betman (argued), Katten, Muchin & Zavis, Chicago, IL, for defendants-appellees.

Before CUMMINGS and COFFEY, Circuit Judges, and ZAGEL, District Judge.*

---

COFFEY, Circuit Judge.

The plaintiff, Indemnified Capital Investments ("ICI"), brought this action against the defendants alleging fraud, breach of fiduciary duty, and violations of the Commodity Exchange Act ("CEA"), 7 U.S.C.A. §§ 1–25 (West Supp.1993). The district court dismissed the complaint on the ground that the plaintiff lacked standing to bring the suit. The plaintiff appeals the dismissal as well as the trial court's failure to permit the plaintiff to amend the complaint. We affirm.

## I. BACKGROUND

The plaintiff, ICI, is a foreign corporation organized under the laws of the Turks and Caicos [1] maintaining its principal place of business in Nassau, Bahamas. Defendant R.J. O'Brien Associates, Inc. ("RJOB"), is an Illinois corporation with its principal place of business in Chicago, Illinois. Defendant John W. O'Brien is RJOB's Chief Executive Officer ("CEO") and his brother Robert J. O'Brien, Jr. is a principal of RJOB. Both John and Robert are Illinois citizens and associate members of the National Futures Association ("NFA").[2] Defendant VMB Agrimarketing Services, Inc. ("VMB"), is an Iowa corporation with its principal place of business in Missouri. Defendant Vernon Bounds is President and CEO of VMB and a resident of Missouri.

In October of 1987, ICI, which maintains customer accounts for investment purposes, opened a commodity futures trading account with RJOB by executing a single customer agreement. Under that one agreement, RJOB was to invest the funds from some forty-three separate accounts. Thirty-nine of these accounts were owned by individual unnamed customers of ICI. Four of the forty-three accounts were "house accounts" which belonged to ICI and not to its respective customers. Over the course of ten months, RJOB's trading proved unsuccessful, prompting RJOB to recommend that ICI

---

* The Honorable James B. Zagel, District Judge for the Northern District of Illinois, is sitting by designation.

1. The Turks and Caicos are two groups of islands that form a British colony in the British West Indies.

2. The complaint also identifies RJOB employees James C. O'Brien and Gerald F. Corcoran as individual defendants. Since there are no allegations of wrongdoing on the part of James O'Brien or Gerald Corcoran, we dismiss the appeal as to them individually.

allow VMB to trade the customer accounts (VMB never traded for ICI's house accounts). Between August 1988 and April 1989, VMB increased the total value of the ICI customer accounts from roughly $200,000 to $600,000.

On April 29, 1989, Michael F. Holtzman, attorney for ICI, directed RJOB to "take profits," i.e., sell all commodities from these accounts to protect gains from future downturns in the market. John O'Brien assured Holtzman that the customers' profits were secure when in fact they were not. In May 1989, the market took a serious downturn resulting in the loss of all profits in the ICI customer accounts. On May 26, 1989, VMB through its CEO and president, Vernon Bounds, faxed a market letter advising its clients that it had withdrawn from the market as of May 25, 1989. However, VMB still maintained some market positions which incurred losses in excess of $90,000 in the five days following (ending May 30, 1989).

After May 1989, all of ICI's customer accounts were liquidated and ICI and RJOB entered into negotiations to assess the losses and arrange for settlement of debit accounts. On May 19, 1990, RJOB "netted"[3] the house accounts and the customer accounts crediting the ICI house account with $43,973 and debiting a total of $43,973 from the customer accounts. On May 28, 1992, ICI filed the instant lawsuit alleging fraud, breach of fiduciary duties, and violation of the Commodities Exchange Act § 4 (fraud). The trial court dismissed the suit for lack of standing.

## II. ISSUES

ICI argues that the district court erroneously dismissed the complaint because ICI lacked standing. ICI also argues that the district court abused its discretion in refusing to allow ICI to amend its complaint by clarifying facts.

## III. DISCUSSION

### A. *ICI's Standing as to "Customer" Accounts*

VMB and Vernon Bounds (collectively the VMB defendants) argue that they only had authorization to trade in the customer accounts and not in the house accounts. They maintain that ICI lacks standing to challenge any losses incurred in those customer accounts because the customers alone suffered loss and thus absent a specific authorization assigning the customers' claims to ICI, the customers alone have standing to pursue the litigation.

■■■ "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of the particular issues. This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In 1962, the Supreme Court summarized the constitutional element of the standing question as, "have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends ...?" *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Just last Term, the Court stated "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The constitutional minimum for standing includes three elements:

"First, the plaintiff must have suffered 'an injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized, ... and (b) 'actual or imminent, not conjectural or hypothetical,'.... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'... Third, it must be 'likely,' as opposed to merely 'speculative,'

---

**3.** "Netting" involved offsetting an account with a debit balance (the house account) with an account or accounts that maintained a positive balance (the various customer accounts). The ICI/RJOB Customer Agreement permits such a practice.

that the injury will be 'redressed by a favorable decision.' "

*Id.* (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements," *id.,* and because standing is a question of federal law, we review *de novo* a district court's standing determination. *Frank Rosenberg, Inc. v. Tazewell County,* 882 F.2d 1165, 1167 (7th Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990).

■ The defendants, seeking dismissal, argue that a plaintiff "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others." *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166, 92 S.Ct. 1965, 1968, 32 L.Ed.2d 627 (1972). ICI counters that under Commodities Exchange Act § 25(a)(2) it has standing because the Act authorizes private causes of action. The Act states:

"Except as provided in subsection (b) of this section, the rights of action authorized by this subsection ... shall be the exclusive remedies under this chapter available to any person who sustains loss as a result of any alleged violation of this chapter."

7 U.S.C.A. § 25(a)(2). The Act creates a private right of action for "any person who sustains loss as a result of any alleged violation of this chapter"; however, the Act does not confer standing. Regarding ICI's standing to bring suit against VMB and Vernon Bounds, we are in agreement with the district court that ICI has not suffered an injury in fact. For the purposes on Article III standing, the losses incurred by the ICI customer accounts accrued only to ICI's customers and are too attenuated to create standing for ICI. Based on the record before us, VMB only had authorization to trade in the customer accounts and thus any losses are only attributable to ICI's customers. Accordingly, ICI has failed to satisfy the injury in fact element of standing. *See Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 117–19 (2d Cir.1991); *E.F. Hutton & Co. v. Hadley,* 901 F.2d 979, 985 (11th Cir.1990).

ICI claims that it has satisfied the injury in fact requirement of Article III standing under *North Shore Gas Co. v. EPA,* 930 F.2d 1239, 1242 (7th Cir.1991). In *North Shore Gas,* we held that "a probabilistic benefit from winning a suit is enough 'injury in fact' to confer standing in the undemanding Article III sense." *Id.* The probabilistic benefit for the plaintiff in *North Shore Gas* was that if it prevailed in its suit to enjoin the EPA from enforcing an order against another company, the cost of the plaintiff complying with cleanup of its superfund site would be reduced even though at the time of the suit the plaintiff's liability for the cleanup had not been established. In *Bankers Trust Company v. Old Republic Insurance Company,* 959 F.2d 677 (7th Cir.1992), we clarified the probabilistic injury requirement stating "this doesn't mean that any probability, however slight, of injury is enough to permit a suit to be maintained in federal court. We are dealing with matters of degree." *Id.* at 681. We note that in the instant case, ICI has not alleged in its complaint that it owned the funds in its customer accounts, that it was injured by the losses in those accounts, that it might suffer some future loss of business, or that its customers assigned their claims to ICI. Although ICI did mention that its customers may bring a suit against ICI, that assertion falls short of demonstrating a probabilistic injury and is too tenuous to create federal standing.

■ Finally, ICI argues that it satisfies the requirements of third party standing. We disagree, for third party standing arises only in rare occasions and the plaintiff must still be able to allege a personal injury, i.e., injury in fact. *See Frank Rosenberg, Inc. v. Tazewell County,* 882 F.2d 1165, 1168–69 (7th Cir.1989) (and cases cited therein). "Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party." *Singleton v. Wulff,* 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976) (quoting *Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953)); *see also Warth,* 422 U.S. at 501, 95 S.Ct. at 2206 (even in third party standing cases, "Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself ..."); *Frank Rosenberg, Inc.,* 882 F.2d at 1169 ("the Article III requirement of injury in fact remains" in third party standing cases).

Even if ICI satisfied the constitutional requirements for standing, which it has not, it must also satisfy the prudential requirements. *Singleton,* 428 U.S. at 113, 96 S.Ct. at 2874 ("Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third person not parties to the litigations."). Two factual elements determine whether third party standing is appropriate: (1) "the relationship of the litigant to the person whose right he seeks to assert," and (2) "the ability of the third party to assert his own right." *Id.* at 114–116, 96 S.Ct. at 2874–75. In this case we have serious concerns as to whether ICI could be an effective litigant for its customers since ICI actually benefitted from its customers' misfortune, i.e., ICI received commissions on the trades executed by VMB and ICI's house account was credited with $43,973 from the customer accounts when RJOB netted the accounts. Even if ICI were to prevail in this suit, there is nothing that we can see—short of a lawsuit by the customers against ICI—that would require ICI to pass the proceeds of a favorable judgment on to its customers. Moreover, if ICI's customers were interested in bringing this claim against the defendants, they could very easily have assigned their rights to ICI. Thus, in regard to the customer accounts, we are of the opinion that ICI has failed to satisfy not only the constitutional requirements but also the prudential requirements of standing. Therefore, we affirm the trial court's dismissal of the complaint as to defendants VMB Agrimarketing and Vernon Bounds.[4]

### B. *Standing with Respect to House Accounts*

The standing challenges of RJOB, John W. O'Brien and Robert J. O'Brien, Jr. are more problematic because ICI alleged in its complaint that it opened its house account with $14,454 of its own funds (transferred from another brokerage) and thus it satisfied the injury in fact element of standing. The district court failed to address the house accounts in the context of standing and dis-missed the claim with regard to RJOB in summary fashion stating "the plaintiff lacks standing to bring this suit on behalf of its undisclosed customers." This finding ignores the allegations in the complaint that among the accounts RJOB invested were certain "house accounts" funded by ICI. If ICI actually funded the house account and suffered loss, then it has satisfied the injury in fact requirement.

Nonetheless, ICI's claim may be dismissed on other grounds, as this court has often stated "we may affirm on any ground that finds support in the record." *Wallace v. Greer,* 821 F.2d 1274 (7th Cir.1987); *Reinstine v. Rosenfield,* 111 F.2d 892, 894 (7th Cir.1940) ("from time immemorial courts of appeal have been authorized to affirm the rulings of lower courts for any valid reason based on the evidence, although not assigned"); *Resolution Trust Corp. v. Juergens,* 965 F.2d 149, 151 (7th Cir.1992) ("[w]e may of course affirm on any ground that finds support in the record").

We begin with an examination of whether ICI has standing with regard to its house accounts. In ICI's prayer for relief (Counts I–V), it requests that the court establish a constructive trust for the benefit of ICI and its customers for the $50,575 in trading deficits generated in the house accounts. As an initial matter, we must determine the composition of this $50,575. When ICI transferred its customer accounts to RJOB, included in that transfer was one house account (#57800) which contained $14,454 of ICI's own funds. Between August 1987 and January 1989, RJOB's trading losses put the account $45,614 in the hole. In February 1989, John O'Brien transferred $20,000 of his own money into Account #57800 and over the next two months realized profits sufficient to repay the $20,000 and eliminate the debit balance in Account #57800 (but he failed to recoup the original $14,454). Thereafter, no further trading occurred in Account #57800. During this time, however, RJOB established three more

---

4. We also reject plaintiff's reliance on Fed. R.Civ.P. 17(a) as evidence that ICI is the proper party to bring this suit. ICI's reading of Rule 17(a) would permit a broker to bring an action on behalf of its client, a result as yet unrecognized in the law.

ICI house accounts (# 57999, # 57998, and # 57884) without any funds from ICI. The O'Briens funded these new accounts with their own money or credit and began trading in them without objection from ICI. Between July 1988 and January 1989, Account # 57999 generated a $27,609 debit balance and Account # 57998 generated an $18,620 deficit. In February 1989, John and Robert O'Brien transferred the debit balances totalling $46,229 in Account # 57999 and # 57998 into a new house account # 57884. Additional trading in Account # 57884 between February 1989 and July 1989 increased the debit balance to $50,575. No further trading occurred in any of the house accounts after July 1989. On May 19, 1990, RJOB settled the $50,575 debit balance in Account # 57884 by transferring $43,973 from various ICI customer accounts into Account # 57884 and paying $6,602 of its own funds to eliminate the debit balance.

The above description of events makes clear that the $50,575 ICI requests in its complaint can be broken down into two separate and distinct amounts: $43,973 transferred from ICI customer accounts into the ICI house account; and $6,602 of RJOB funds transferred into the house account. As we stated above, ICI lacks standing to bring a claim on behalf of its customers because ICI falls short of satisfying the injury in fact requirement of Article III standing. *Supra.* Our holding that ICI lacks standing to assert a claim on behalf of the customer accounts applies with equal force to the $43,973 at issue here for it was ICI's customers and not ICI who suffered the injury from RJOB transferring $43,973 out of customer accounts and into the house account. The plaintiff (ICI) has failed to establish that it suffered any injury from this transfer, in fact, the record reflects ICI benefitted by the transfer since the ICI house account debit balance was reduced by $43,973. Similarly, ICI has not suffered an injury as to the remaining $6,602 because RJOB already credited that amount to the ICI account eliminating the deficit. Hence, ICI lacks standing to challenge $43,973 of the deficit and the remaining $6,602 has already been

repaid. Thus, ICI has suffered no injury as to the $50,575 in Account # 57884.

The only question that remains is whether ICI has standing to maintain a claim for the $14,454 in losses that RJOB generated in Account # 57800. Nowhere in their prayer for relief is there a mention of the $14,454; however, the prayer does request (1) the creation of a constructive trust for the $50,575 "together with any other monies unlawfully held and any profits made by Defendants on the monies invested by Plaintiff of all kinds and descriptions ... [and (2) ] that Plaintiff shall recover for all other damages proximately caused by Defendants' conduct, including but not limited to, excessive brokerage commissions...." Taking the complaint in the light most favorable to ICI (as we must in a motion to dismiss), one might reasonably infer that the above generalized request for relief includes the $14,454 initially deposited in house account # 57800. Thus we must determine whether dismissal of the complaint was proper as to the $14,454 loss in Account # 57800 on other grounds.

## C. *Statute of Limitations*

■ As we stated above, all trading in Account # 57800 ceased in February 1989 or at the latest, April 1989 (the complaint is unclear on this point). The complaint was filed on May 28, 1992, thus Counts IV and V alleging violations of the Commodities Exchange Act ("CEA") are barred by the statute of limitations because the CEA contains a two-year statute of limitations. 7 U.S.C. § 25(c). Likewise, Count III alleging a violation of the Illinois Consumer Fraud Act, Ill.Rev.Stat. Ch. 121½, ¶ 270a, § 10a(e), is time-barred because that Act contains a three-year statute of limitations. Since all trading in Account # 57800 ceased more than three years before the complaint was filed on May 28, 1992, Count III is barred by the three-year statute of limitations in the Illinois Consumer Fraud Act.

## D. *Breach of Fiduciary Duty*

Count I states a claim for breach of fiduciary duty and ICI made three allegations in

support of this Count:[5] (1) generating trading debits in the ICI house accounts; (2) failing to supervise the trading activities of defendants; and (3) violating National Futures Association Compliance Rule 2–4.

■ ICI alleges that RJOB failed to supervise the trading activities of John O'Brien and Robert J. O'Brien, Jr., however, the plaintiff has failed to direct us to any statute, regulation or case law creating such a cause of action in the absence of some specific wrongdoing. *See Khalid Bin Alwaleed Found. v. E.F. Hutton and Co.*, 709 F.Supp. 815, 817–21 (N.D.Ill.1989) (dismissing plaintiff's failure to supervise claim because CFTC Rule 166.3 requiring supervision did not create a private right of action). Plaintiff has not alleged a single act of self-dealing, negligent trading or churning.[6] At best, plaintiff alleges that RJOB's trading was unsuccessful; yet a lack of success is not actionable. *O'Brien v. First Commodity Corp.*, 1989 WL 241806, 1989 CFTC LEXIS 50, Comm.Fut.L.Rep. (CCH) ¶ 24,402 at 35,768 (1989); *Windson v. First Commodity Corp.*, 1987 WL 106996, 1987 CFTC LEXIS 150, Comm.Fut.L.Rep. (CCH) ¶ 23,951 at 34,333 (1987); *Vetrono v. Manglapus*, 1985 WL 56313, 1985 CFTC LEXIS 296, Comm. Fut.L.Rep. (CCH) ¶ 22,702 at 30,985 (1985).

■ Finally, ICI offers RJOB's failure to comply with National Futures Association Compliance Rule 2–4 as evidence of a breach of fiduciary duties. The Rule states:

JUST AND EQUITABLE PRINCIPLES OF TRADE.

Members and Associates shall observe high standards of commercial honor and just and equitable principles of trade in the conduct of their commodity futures business.

This general rule, however, fails to create an independent private right of action. In *Spicer v. Chicago Board of Options Exchange, Inc.*, 977 F.2d 255, 264–65 (7th Cir.1992), we were called upon to determine whether Chicago Board of Exchange Rule 4.1 created a private right of action. The Rule, which is quite similar to NFA Compliance Rule 2–4, states that exchange members shall not "engage in acts or practices inconsistent with just and equitable principles of trade." We held that "it should be clear that Congress, in amending the Exchange Act, did not intend to provide an implied remedy under § 6(b) for the exchange rule violations alleged in this case." *Id.* (citing *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 182–83 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966)). Because none of the allegations in the complaint is sufficient to state a claim for breach of fiduciary duty, we affirm the dismissal of Count I for failure to state a claim.

### E. *Common Law Fraud*

■ In Count II of the complaint, ICI alleges that RJOB committed common law fraud. The elements of common law fraud are:

"(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance of the truth of the statements, and (5) damage to the other party resulting from such reliance."

*Renovitch v. Kaufman*, 905 F.2d 1040, 1049 (7th Cir.1990) (quoting *Board of Educ. v. A, C and S, Inc.*, 131 Ill.2d 428, 451, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989)). The only allegation that ICI makes resembling a common law fraud claim is that the O'Briens

---

**5.** The complaint also makes three allegations involving the customer accounts but we need not consider those allegations as they relate only to the customer accounts and not House Account # 57800. ICI also alleges in the complaint that the O'Briens misrepresented their trading abilities. This allegation is insufficient to support a claim for breach of fiduciary duty for an "agent is subject to no fiduciary duty in making the agreement by which he becomes [an] agent...." *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 78, 109 Ill.Dec. 772, 777, 510 N.E.2d 840,

845 (1987) (quoting Restatement (Second) of Agency § 389, comment b (1959)).

**6.** "The term 'churning,' in the context of securities regulation, denotes a course of excessive trading through which a broker advances his own interests (e.g., commissions based on volume) over those of his customer." *Costello v. Oppenheimer & Co.*, 711 F.2d 1361, 1367 (7th Cir.1983).

misrepresented their trading abilities.[7] Paragraph 15 of the complaint states "Messrs. O'Brien represented to ICI and Holtzman that their highly successful trading abilities justified the fifty percent (50%) profit sharing arrangement." This allegation fails to state a claim for fraud because only false statements of material fact are actionable. *Id.* In *La Scola v. US Sprint Comm.,* 946 F.2d 559 (7th Cir.1991), in which the plaintiff alleged fraudulent misrepresentation, an employer made several promises to a prospective employee including "the company has a lucrative compensation plan; the executives are 'straight shooters'; US Sprint is ethical and committed to conducting business in accordance with the law...." *Id.* at 568. We ruled that such "promises or opinions" are "too general and difficult to substantiate to be considered statements of fact." *Id.* We went on to state:

> "In considering whether a statement is one of fact or of opinion, we examine 'all the facts and circumstances of a particular case.'... We then
>
>> 'focus on the circumstance surrounding the representation to determine whether the plaintiff may have justifiably relied on the opinion as though it were a statement of fact. Among the relevant factors in such a case are the access of the parties to outside information and the relative sophistication of the parties.'"

*Id.* (quoting *West v. Western Cas. and Sur. Co.,* 846 F.2d 387, 393 (7th Cir.1988)). Clearly in this case, ICI could have obtained evaluations of RJOB's trading performance before choosing to transfer its account from another futures commission merchant to RJOB. Additionally, ICI was not in a position of unequal bargaining power as Michael Holtzman, ICI's agent, was an attorney who regularly handled ICI's negotiations and oversaw its investing. Moreover, the representation of the O'Briens' "highly successful trading ability," made in the context of soliciting a customer, can be construed as nothing but an opinion and not a false statement of material fact. If actions for fraud could be successfully maintained every time someone optimistically represents his or her abilities, then our courts would be hopelessly deluged with fraud suits. Thus, we are of the opinion that Holtzman's knowledge, experience and sophistication, coupled with the nature and context of the representations made by RJOB (mere opinions rather than statements of fact) mean that ICI cannot prevail on its fraud claim. Accordingly, we affirm the dismissal of Count II (common law fraud).

### F. *Punitive Damages*

The final claim (Count VI) is for punitive damages. Since punitive damages is a remedy for a wrong suffered, ICI must prevail on one of its substantive claims in order to receive an award of punitive damages. *McGrew v. Heinold Commodities, Inc.,* 147 Ill.App.3d 104, 110, 100 Ill.Dec. 446, 451, 497 N.E.2d 424, 429 (1986) ("punitive damages represent a type of relief rather than an independent cause of action"). Having dismissed all the other counts, we must also dismiss the punitive damages claim because it fails to state an independent cause of action.

### G. *Denial of Leave to Amend Complaint*

Lastly, ICI argues that the district court erred in denying the plaintiff leave to amend its complaint. Given our holding that ICI lacked standing to bring claims on behalf of the customer accounts and that the remaining claims are barred by the statute of limitations or fail to state a claim, we are convinced that the trial court did not abuse its discretion in denying ICI leave to amend its complaint. The trial judge stated in his order dismissing the complaint that there were "significant impediments" to ICI's cause of action (referring to the failure to state a claim and the statute of limitations). After

---

7. Once again, as with the breach of fiduciary duty claim, several of the allegations in the complaint do not pertain to every count. For instance, three allegations relate only to the customer accounts (i.e., failure to take profits, false information in May 26, 1989 fax, and "netting" of customer accounts with House Account #57884). Two other allegations clearly fail to state any claim even resembling fraud (generation of trading deficits and failure to supervise trading activities). Thus we need only examine the allegation of misrepresenting the trading abilities of John and Robert O'Brien.

examining the merits of each allegation and each count in the complaint, we are convinced that the plaintiff could not prevail under this set of facts; thus we affirm the district court's decision denying plaintiff leave to file an amended complaint.

AFFIRMED.