QUAKER STATE MUSHROOM COMPA-
NY, INC., a Pennsylvania
corporation, Plaintiff,

v.

DOMINICK'S FINER FOODS, INC., OF
ILLINOIS, a Delaware corporation, li-
censed to do business in Illinois, De-
fendant.

No. 85 C 4515.

United States District Court,
N.D. Illinois, E.D.

May 22, 1986.

Charles N. Brusso/Gene Moskowitz/Thomas M. Gearhart, Charles N. Brusso & Associates, Chicago, Ill., for plaintiff.

Vincent J. Getzendanner, Madigan, Stanner, Kahn, Bonifacic & Getzendanner, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Quaker State Mushroom Co. ("Quaker State"), a Pennsylvania corporation, has filed this diversity breach of contract complaint charging that Dominick's Finer Foods, Inc. ("Dominick's"), a Delaware corporation doing business in Illinois, failed to pay the agreed price for four orders of canned mushrooms. The parties have completed discovery, and Quaker State has filed a motion for summary judgment. For the reasons stated below, Quaker State's motion for summary judgment is denied.

## I. THE FACTS

It is undisputed that in late March of 1982, Joseph Tercha, the vice president of Quaker State, signed a document provided by Dominick's entitled "Corporate Presentation Worksheet." The worksheet set forth the terms upon which Quaker State would sell mushrooms to Dominick's. Paragraph 41 of the worksheet stated that "the above agreement is intended to be in effect for a period of 1 year." The worksheet also provided that Quaker State must give Dominick's thirty days notice before raising mushroom prices. The agreement did not contain a renewal clause. There is no evidence in the record that the parties renewed the agreement after it expired in March 1983.

About eight months after the terms in the worksheet expired, Dominick's ordered four shipments of mushrooms from Quaker State. It is undisputed that Dominick's placed these orders on October 23, 1983,

November 9, 1983, and twice on December 2, 1983. The parties, however, disagree as to the manner in which Dominick's submitted the purchase orders. Quaker State insists that Gregg Otto ("Otto"), Dominick's' purchasing agent, personally placed these orders over the telephone. Dominick's, however, denies that Otto phoned in the orders. Rather, Dominick's contends that Otto internally transmitted information regarding the purchase orders through Dominick's' computer system and thereafter directed computer printouts to a secretary who then mailed these printouts to Quaker State. These printouts stated the price that Quaker State had set in February 1983. Quaker State avers that it did not receive Dominick's' written confirmations.

After Dominick's had placed its first purchase order, Quaker State recognized that it lacked inventory to fill the order. Quaker State promptly mailed a notice of price increase to Dominick's, dated November 10, 1983, which states that "[t]his list of prices is in effect and supersedes all previous quotations. Prices are subject to change without notice. All orders are subject to final confirmation of this office." Dominick's has acknowledged that it received this notice shortly after November 10.[1]

After receiving Quaker State's price increase notice, Dominick's accepted delivery of mushrooms from Quaker State four times. Quaker State's invoices which were included in the shipments demanded the prices contained in the November 10 price increase notice. Dominick's, however, paid for the mushroom orders in accordance with the prices that were in effect before the November 10, 1983 notice. Dominick's made the lower payments based upon a theory that, pursuant to the thirty-day notice in the corporate presentation worksheet, the prices in Quaker State's November 10, 1983 price increase letter were not

---

1. Quaker State asked Otto some questions at his deposition which imply that it believes that one of its officers spoke with someone at Domin-

ick's, perhaps Otto, about the price increase. However, it presented no evidence about such a conversation, so we have disregarded it.

effective for orders placed before December 10, 1983.

## II. DISCUSSION

Quaker State seeks the difference between the prices that Dominick's paid for the four mushroom shipments and the prices contained in the November 10, 1983 price increase notice. Summary judgment in favor of Quaker State can be granted only if it can show that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.Civ.P. 56(c). All of the evidence, as well as the reasonable inferences from the evidence, must be construed in a light most favorable to Dominick's, the party opposing the summary judgment motion. *See, e.g., Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). The burden of proving the nonexistence of a genuine factual issue falls upon Quaker State. *Korf v. Ball State Univ.*, 726 F.2d 1222, 1226 (7th Cir.1984). If Quaker State meets its burden, then the burden shifts to Dominick's to demonstrate the existence of a genuine issue of material fact. *Big O*, 741 F.2d at 163. The mere submission of naked pleadings or assertions will not satisfy this burden. *Id.*

■ At the outset, we must reject Dominick's contention that the "corporate presentation worksheet" bears on this case. Although we are skeptical of Quaker State's argument that the worksheet did not consititute a contract, we need not decide the issue since the worksheet is irrelevant to the transactions at issue. On its face, the terms of the worksheet, assuming it was a contract, expired approximately eight months *before* Dominick's placed the orders which form the basis for this suit. The intent of the parties, as embodied in the worksheet, clearly demonstrates that the parties agreed that the terms of the worksheet would only apply for one year, after which the agreement would expire. Neither party manifested an intent to renew the terms set forth in the agreement, and in the absence of an agreement to renew, the terms of the expired contract cannot govern the dealings of the parties. *See Korody Marine Corp. v. Minerals & Chemicals Phillip Corp.*, 300 F.2d 124, 125 (2d Cir.1962) (per curiam); *Andersen v. Waco Scaffold & Equip. Co.*, 485 P.2d 1091, 1094 (Or.1971).

■ Nonetheless, Dominick's argues that even if the agreement had expired, the course of dealings between the parties required Quaker State to give Dominick's thirty days notice increasing prices. *See* Ill.Rev.Stat. ch. 26 para. 1–205(1) (1983).[2] Dominick's has not alleged any facts or cited any authority to establish that Quaker State implicitly agreed to give Dominick's thirty days notice prior to raising its prices. Moreover, Quaker State has demonstrated that the notice of price increase

---

2. Ill.Rev.Stat. ch. 26, para. 1–205(1) defines a course of dealing as "a sequence of previous conduct between the parties ... which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."

The parties have assumed that Illinois law controls this diversity suit. The question is largely academic, since both Illinois and Pennsylvania—the only two states with a significant interest in this suit—have adopted the Uniform Commercial Code. So far as we know, their interpretations of the relevant Code sections are not in conflict, so this is a "false conflict" situation. If we were to do a choice of law analysis we would apply Illinois' choice of law rules. *See Klaxon v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). We recently held that Illinois courts now generally apply the "most significant relationship test" spelled out in the Second Restatement of Conflicts. *See Wonderlic Agency, Inc. v. Acceleration Corp.*, 624 F.Supp. 801, 803–04 (N.D.Ill.1985). The relevant provision of the Restatement is § 191, which covers contracts for the sale of goods and which says that where the parties have not agreed on the issue the law of the *place of delivery* generally controls. This is usually the place of shipment, i.e., the seller's state, but this conclusion depends on the intent of the parties. *See* § 191 Commend d. The parties did not discuss this issue and from the record before us, we could not determine whether Pennsylvania or Illinois was the "place of delivery." However, in light of the "false conflict" issue and the uniformity of the Code, we have assumed for convenience that Illinois was the place of delivery and that its law governs this case, although we have turned to other states' interpretations in a few places as well.

provision in the worksheet was the only instance during the course of the parties' dealings in which Quaker State was required to provide Dominick's with thirty days notice prior to raising its prices.[3] On the basis of the single corporate presentation worksheet, we cannot conclude that the parties had an implicit understanding that Quaker State had to give Dominick's thirty days notice before raising its prices. The outcome might be different if Dominick's could produce more evidence on this issue, but on the basis of the record now before us, we must agree with Quaker State's contention that the four transactions precipitating this lawsuit must be analyzed as individual contracts.

We also agree with Quaker State that these four transactions should be placed in two categories, the two preceding Quaker State's November 10 notice and the two following. The parties characterize the first two differently. Quaker State calls the October 26 and November 9 purchase orders "offers," in which Dominick's proposed to buy the mushrooms at the old price. Dominick's agrees. But Quaker State says that the November 10 notice of a price increase was a counter-offer which rejected Dominick's offer. Quaker State concludes that Dominick's accepted this counter-offer when it accepted shipment of these goods, even though it knew about the November 10 notice and the corresponding invoices in the shipment.

Quaker State's theory rests on its characterization of the November 10 price notice as a "counter-offer." This description is inaccurate. If detailed enough, a price quotation can amount to an offer creating the power of acceptance. *See, e.g., Idaho Power Co. v. Westinghouse Electric Corp.*, 596 F.2d 924, 925 (9th Cir. 1979); *NASCO, Inc. v. Dahltron Corp.*, 74

Ill.App.3d 302, 307, 30 Ill.Dec. 242, 247, 392 N.E.2d 1110, 1115 (2d Dist.1979). But to do so, the offer must intend that the contract exist upon acceptance of the offer; that is, it must reasonably appear from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract. *See McCarty v. Verson Allsteel Press Co.*, 89 Ill.App.3d 498, 507–08, 44 Ill.Dec. 570, 577, 411 N.E.2d 936, 943 (1st Dist.1980). A price quotation that is subject to the seller's confirmation is not an offer since the buyer's assent will not consummate the contract. *Id.* at 508, 44 Ill.Dec. at 577, 411 N.E.2d at 943; *West Penn Power Co. v. Bethlehem Steel Corp.*, 348 A.2d 144, 152 (Pa.Super.1975).[4] Because the November 10 price quotation letter said that the prices listed there were subject to change without notice and that all orders were subject to Quaker State's confirmation, this quotation was not an offer. To illustrate this, suppose that after receiving this November 10 list, Dominick's sent a purchase order for the higher price listed in the notice. Would this have created a contract binding both parties? Clearly not. Quaker State had made Dominick's purchase order subject to its own confirmation. Quaker State could have decided not to confirm, perhaps because of an increase in its costs in the interim. Such a purchase order, not the price, would constitute the offer creating the power of acceptance. *McCarty*, 89 Ill.App.3d at 508, 44 Ill.Dec. at 577, 411 N.E.2d at 943.

Indeed, Quaker State's own conduct reveals that in actual practice it does not view its price quotations as "offers." Its last price quotation memorandum, dated February 3, 1983, contained the same language about "confirmation" as the later November 10 notice. The parties agree that this memorandum listed the prices in effect before November 10. If Quaker

---

**3.** Once during the year that the terms of the corporate presentation worksheet were in effect, Quaker State raised its prices. Dominick's did not place any orders within thirty days after Quaker State effectuated the price increase.

**4.** If there is a "subject to confirmation" clause, but also a clause saying "all quotations are for

immediate acceptance," a price quotation might amount to an offer. *See Nasco*, 74 Ill.App.3d at 307, 30 Ill.Dec. at 247, 392 N.E.2d at 1115 (dictum). However, since there was no "acceptance" clause in this case, *McCarty* and not *Nasco* controls.

State really viewed its price lists as "offers," and believed that a purchase order sent in response to this list could be an acceptance, Quaker State would have to admit that Dominick's created a contract *at the old price* when it sent its two purchase orders, based on the February 3 price list, before November 10. The fact that Quaker State responded by issuing the new November 10 list raising its prices shows that it took its "final confirmation" language seriously, that its lists are not offers, but are invitations to place offers at the listed prices, subject to confirmation or modification. If the February 3, 1983 list is not intended as an offer, which it was not, then neither is the identically worded November 10 list.

In short, we reject Quaker State's argument that the November 10 list was an offer. It follows that Dominick's acceptance of the goods is not necessarily an acceptance at the higher price. However, Dominick's wrongly concludes from this that Quaker State's shipment of the mushrooms necessarily amounted to an acceptance of Dominick's original purchase order at the lower price. Dominick's argument implicitly assumes that because the November 10 list was not a counter-offer, it should be ignored, leaving Dominick's own offer intact. While it was not an offer in its own right, the November 10 notice quite clearly rejected Dominick's offer. It cannot reasonably be read as anything other than a refusal to assent to the old price. Since a rejection terminates the power of acceptance, *see, e.g.*, Restatement (Second) of Contracts, § 38 (1981), we cannot accept Dominick's theory that a contract was created at the lower price when Quaker State shipped the mushrooms.

**5.** Section 2–204(1) states:
(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

**6.** Section 2–204(3) reads:
(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

■ Having rejected both side's theories, we are left with the problem of how to properly analyze the above facts. It is clear that the parties intended to have a contract, acted as if they had a contract, but had not agreed upon a price for the goods. The UCC has several provisions which are relevant to such a situation. Conduct by the parties which recognizes the existence of a contract may sometimes suffice to create the contract. *See* UCC § 2–204(1).[5] This may be so even if one or more terms of a contract are indefinite, so long as the parties intended to create a contract and an appropriate remedy can be given. *See* § 2–204(3).[6] If the parties act in a way which recognizes the existence of a contract, one may exist even though the writings of the parties do not otherwise establish a contract; the terms of such a contract are those upon which the writing agree, along with other terms implied by law under the UCC. *See* § 2–207(3).[7] From these provisions, it is possible to conclude that the parties had an enforceable contract, since their conduct in many ways recognized the existence of one. Sellers usually do not ship and buyers do not receive goods unless they think they have struck a deal.

■ However, even under the UCC's liberal terms, to conclude there was a contract, it is necessary to resolve the dispute over the *price* of the mushrooms. To do so, we turn to § 2–305(1):

(1) The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if

**7.** Section 2–207(3) reads:
(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

(a) nothing is said as to price; or

(b) the price is left to be agreed by the parties and they fail to agree; or

(c) the price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded.

None of the three subsections apply to this case. This is not a case where the parties said nothing about price; where the parties left the price to be agreed upon later; or where the parties left the price to be determined by an outside agent. This case falls within 2–305(4), which reads:

(4) Where, however, the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract. In such a case the buyer must return any goods already received or if unable so to do must pay their reasonable value at the time of delivery and the seller must return any portion of the price paid on account.

Under the above facts it is likely, if not certain, that the parties "intended not to be bound unless the price be fixed or agreed." At a minimum, there is a factual issue on this point, which we must resolve against Quaker State. *Cf. Western Industries, Inc. v. Newcor Canada,* 739 F.2d 1198, 1205 (7th Cir.1984) (where inconsistent writings must be analyzed with other evidence, jury is to decide whether or when a contract was made). As such, despite the other liberal UCC provisions cited above which generally support creation of contracts, § 2–305(4) commands that in this situation of no assent as to price, no contract exists. Thus, under that section, Dominick's would be bound to return the mushrooms and get a refund, or if it cannot do so, pay the reasonable value of the mushrooms at time of delivery. We assume it can only do the latter since the mushrooms have no doubt been sold or destroyed in the two-and-a-half years since they were ordered. At present a factual issue exists as to what price is "reasonable." Quaker State anticipated this situation and submitted an affidavit of one of its officers stating that *its* price is reasonable.

While this statement may be relevant as to price, such a self-serving statement does not suffice to meet Quaker State's burden of showing no genuine issue exists as to that fact.

To summarize, we hold that when we look to the exchange of purchase orders and price list we must conclude either that no contract was created as to the two orders Dominick's placed before November 10, 1983 or that a genuine factual dispute exists as to this issue; that Dominick's will likely owe Quaker State a reasonable price for those goods; and, if so, that a genuine factual issue exists as to what that price was on the day of delivery. It follows that summary judgment must be denied as to those two orders.

The same result obtains with respect to the two orders which Dominick's placed after November 10. Under our above analysis, the November 10 price list constituted not an offer but an invitation to place an order at the new price. Dominick's placed an order on December 2. The parties dispute whether Dominick's sent written confirmation of this order. Resolving this dispute as we must in Dominick's favor, we find that Dominick's sent written confirmation of a purchase order at *the lower price*, which Quaker State says it never received. Under this scenario, Quaker State's shipment, which would have been an acceptance if Dominick's had sent an order at the higher price, *see* UCC § 2–206(1)(b), does not amount to an acceptance since it is based on such fundamentally different terms than those proposed in the purchase orders; that is, the shipment cannot be viewed as an objective manifestation of mutual assent to Dominick's price terms, even under the liberal provisions of § 2–207(1). *See McCarty,* 89 Ill.App.3d at 507–08, 44 Ill.Dec. at 578–79, 411 N.E.2d at 944–45; *cf.* § 2–305(4) (discussed above) (no contract where parties cannot agree about price and they intend not to be bound without such agreement). Nor do we view Dominick's acceptance of the shipment as acceptance of an offer to purchase them at the higher price, in light of all the other objective indications that Dominick's did

not assent to that price. Thus, we once again find this case thrust into § 2–305(4), with the result that under the above factual scenario there was no contract and Dominick's is liable for the reasonable value of the goods at the time of delivery. Once again this value cannot be resolved on summary judgment on this record.

For the above reasons, Quaker State's motion for summary judgment is denied. We note in conclusion that this contract dispute involves only some $19,000. Our analysis above indicates that the price that is really in dispute is probably the "reasonable" one, that is, the market price. Given the present situation, there is no reason this case should not settle. Indeed, a simple case of this small magnitude should never have mushroomed into full-blown litigation. Had the parties simply split the difference initially, they probably would have been not much worse off than they are now, after having had to pay lawyers fees and other costs to conduct discovery and brief summary judgment motions. A trial in this case would be an economic absurdity. Accordingly, the parties are hereby ordered to meet before the next status hearing to discuss settlement.[8] Failing a resolution, they should consider whether they can agree to prompt and final arbitration. If there is no settlement or agreement to arbitrate, trial counsel and representatives of the parties who have authority to settle this case shall appear at the next status call, which is hereby reset for June 20, 1986, at 11:00 a.m. The parties shall also file their joint pretrial order in open court at such time. It is so ordered.

---

8. Perhaps a fair settlement would be for Dominick's to pay the old price for the two orders it placed before the November 10 increase and the new price for the two orders it placed afterward. This is merely an idea for the parties to consider, not a recommendation.