BENAVIDES, Circuit Judge,
specially concurring:
Because I agree that the evidence is sufficient to support the jury’s verdict that a contract existed and that Neweourt breached it, I concur in the judgment. I write separately because I reach the same conclusion as the majority, but by a different path — one I believe is consistent with the general principles of contract law and the Uniform Commercial Code.
The majority accurately recaps the factual background of this dispute. Neweourt initially issued a price quote to J.B. & Associates. This was followed by an “add-on” price quote to Crest Ridge. Both of these price quotes explicitly stated the terms were “subject to credit department approval.” On January 4, 1991, Crest Ridge issued a purchase order for the wall paneling; this purchase order left the terms of payment blank. A flurry of correspondence ensued concerning the details of the project including job specifications, revisions of shop drawings, final drawings, samples, and strength of coils and fasteners. On March 25,1991, Newcourt issued a demand letter suspending all work on the project unless there was payment in full by April 5. The subcontractor Crest Ridge, unable to make full advance payment, was forced to cover with more expensive paneling purchased under the conventional industry terms of a 45-day billing cycle. Viewing Newcourt’s payment-in-full demand as a breach of contract, Crest Ridge sued. Following trial, the jury returned a verdict that both a contract existed between the parties and that Newcourt breached it. Newcourt appeals arguing that a price quote *152 issued “subject to credit department approval” that is accepted by a purchase order silent as to credit terms cannot create an enforceable contract because there was no agreement as to essential terms.
As the majority correctly notes, this transaction for the sale of paneling between merchants is governed by the Uniform Commercial Code. See Tex.Bus. & Com.Code Ann. §§ 2.104(a), .105(a) (Tex. UCC) (West 1994). Unfortunately, the UCC does not answer every question about business transactions gone awry. As the Code itself notes, common law principles of law and equity continue to supplement its provisions. See id. § 1.103. One such question concerning contract formation is presented in this case.
The majority intimates that because “Newcourt and Crest Ridge exchanged a price quotation and a purchase order, documents the construction industry considered to have binding effect” a contract was formed. Maj. op. at 2168-69. I believe the issue is more complex. It is hornbook law that contract formation requires offer and acceptance. Industry custom can fill in missing terms of a contract or determine the meaning of an agreement. See Tex.Bus. & Com.Code Ann. § 2.208 (Tex. UCC) (West 1994). Likewise, the UCC allows agreement to be expressed by conduct. See id. § 2.204(a). However, contract formation continues to hinge on the existence of an acceptable offer. The UCC, however, provides no guidance as to what an “offer” is.
Newcourt premises its argument on the belief that its price quote was the offer subsequently accepted by Crest Ridge’s purchase order. However, in this case, there are two documents that could operate as an offer: Newcourt’s initial price quote (subject to credit department approval) or Crest Ridge’s purchase order (silent as to terms). In deciding whether a contract was formed and its subsequent terms, it is critical to determine which is the “offer” capable of being accepted.
In general, whoever sends the first form is usually considered the offeror. 1 James J. White & Robert S. Summers, Uniform Commercial Code § 1-3, at 10 n. 8 (4th ed. 1995). A price quotation, if detailed enough, can constitute an offer capable of acceptance. See Axelson, Inc. v. McEvoy-Willis, 7 F.3d 1230, 1232-33 (5th Cir.1993); Gulf States Utils. Co. v. NEI Peebles Elec. Prods., Inc., 819 F.Supp. 538, 549 (M.D.La.1993); Quaker State Mushroom v. Dominick’s Finer Foods, 635 F.Supp. 1281, 1284 (N.D.Ill.1986). However, to do so, it must reasonably appear from the price quote that assent to the quote is all that is needed to ripen the offer into a contract. Gulf States, 819 F.Supp. at 549; Quaker State, 635 F.Supp. at 1281. A price quote that is subject to the seller’s confirmation is not an offer because the buyer’s assent will not consummate the contract. See Axelson, 7 F.3d at 1233 (under Texas law, price quotation requiring seller to accept order could not be an offer, but only invitation for an offer); see also Gulf States, 819 F.Supp. at 549; Quaker State, 635 F.Supp. at 1284. In essence, such qualifying language converts what could have been an offer into a proposal or preliminary negotiation. Technographics, Inc. v. Mercer Corp., 777 F.Supp. 1214, 1216 (M.D.Pa.1991), aff'd, 26 F.3d 123 (3d Cir.1994).
Newcourt’s price quote[1] was made “subject to credit department approval.” The inclusion of this condition precludes the price quote from operating as an offer because Crest Ridge’s assent could not consummate the deal.[2] See Gulf States, 819 F.Supp. at 549-50 (price quote reserving seller’s right to back away from deal not an offer); Techno- *153 graphics, 111 F.Supp. at 1216 (inclusion of home office acceptance clause invalidates price quote as offer); Quaker State, 635 F.Supp. at 1284-85 (price quotation subject to company confirmation not an offer).
The fact that Newcourt’s price quote could not operate as an offer does not, however, preclude contract formation. Since the Newcourt price quotation was not an offer, Crest Ridge’s subsequent purchase order constituted the first offer, acceptance of which constitutes a valid contract. Axelson is instructive. In Axelson, we noted that a price quote containing all material terms could be construed as an offer capable of acceptance by the buyer. 7 F.3d at 1233. However, we immediately stated that “[t]here is one problem with this analysis.” Id. That problem was language in the Axelson price quote implying that the supplier had to accept orders before a contract was concluded. If this type of provision was present, “the quotation could not be an offer; it would only be an invitation for an offer.” Id. This is precisely what we have present in this case. Consequently, Crest Ridge’s purchase order becomes the first offer capable of acceptance by Newcourt. See Technographics, 111 F.Supp. at 1216; Master Palletizer Sys., Inc. v. T.S. Ragsdale Co., 725 F.Supp. 1525, 1531 (D.Colo.1989), aff'd, 937 F.2d 616 (10th Cir.1991). Newcourt did not send an explicit confirming memorandum accepting this purchase order offer. However, the UCC makes clear that a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by the parties. See Tex.Bus. & Com.Code Ann. § 2.204(a) (Tex. UCC) (West 1994); see also Axelson, 1 F.3d at 1233 (conduct by parties recognize existence of contract).
The question of whether an agreement was reached is generally a fact question where, as here, the existence of the agreement is disputed. Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters., 625 S.W.2d 295, 298 (Tex.1981). In this case, the jury was instructed that agreement could be manifested by conduct. As the majority recounts, there is evidence from which a jury could conclude that Neweourt’s conduct reflected an assent to the purchase order offer[3] The extended exchange between the parties following the receipt of the purchase order documents Newcourt’s acceptance. Newcourt was intricately involved in the details of the project providing samples, revisions of shop drawings, fastening details, color stipulations, and final drawing showing where each panel will go. In short, I agree with the majority that a jury could find that Newcourt’s conduct illustrated that it thought they had a deal.
Furthermore, the open payment term of Crest Ridge’s purchase order offer does not prevent contract formation as a matter of law. The open term would simply be filled in according to UCC provisions. See Tex.Bus. & Com.Code Ann. §§ 2.204(c), .310(1) (Tex. UCC) (West 1994). Following a finding of contract formation, a reasonable jury could also conclude that Newcourt’s demand for payment in advance constituted a breach of contract. Likewise, Crest Ridge’s cover with an alternate supplier provided a reasonably certain basis for the calculation of damages.
In this proceeding involving the sale of goods between merchants, the UCC, complemented by common law contract principles, dictates the result reached today. Newcourt *154 was indeed the master of its own offer. However, in choosing to include a requirement of credit department approval, New-court crafted a putative offer that was insufficiently firm. This transformed Newcourt’s price quote into an invitation to Crest Ridge to make an offer. Because Newcourt’s price quote was not an offer capable of acceptance, I disavow any language to that effect. However, Crest Ridge’s subsequent purchase order was a valid offer to buy goods which a reasonable jury could conclude was accepted by Newcourt’s conduct and later breached by Newcourt’s demand letter. I therefore concur in the judgment.

. It is undisputed that Newcourt never supplied a specific price quote with all material terms to Crest Ridge. However, I assume for purposes of this discussion that Newcourt’s price quote made to J.B. & Associates plus the add-ons to Crest Ridge constitute a "price quote” to Crest Ridge.

. I do not contend that all "subject to” conditions prevent contract formation. However, Newcourt's offer made "subject to credit department approval” is essentially the same as one made “subject to Newcourt's approval.” Such an offer is insufficiently firm to support a contract in the context presented herein. This is especially true where the testimony at trial indicated that the credit decision was to be made by a triumvirate composed of Newcourt's president, vice-president, and chief financial officer- — the same people who were involved in the negotiations of the deal.

. The evidence does not support a finding of credit department approval, nor could industry practice with respect to the unstated payment terms negate this specific condition contained in Newcourt’s purported offer. However, such approval is irrelevant to the case at bar. The credit approval condition was part of Newcourt’s preliminary invitation to an offer. As previously discussed, the offer capable of acceptance was Crest Ridge’s purchase order which left the payment term blank. Thus, I would reject New-court’s argument that its price quote was either an offer or that its "subject to credit department approval” language was somehow subsumed into the subsequent contract with Crest Ridge.
Had Newcourt’s initial price quote not suffered from the infirmity previously discussed, in my view a different result would indeed be required. This is because the "subject to credit approval" language, if treated as a condition precedent to contract formation, precludes the formation of a contract except upon realization of that condition, which indisputably never occurred. On the other hand, if the "subject to” language is treated as a condition precedent to an obligation to perform, a contract could be formed, but there could be no finding of breach because the condition to performance was never met.