Lynn COBB–ALVAREZ, Amy Long, Don Fredbeck, Bryan Madsen, Larry Meyne, Gary Turner, Jack Parker, Robert Meyer and Larry Whitney, Plaintiffs,

v.

UNION PACIFIC CORPORATION, Union Pacific Railroad Company and Chicago and North Western Railway Company, Defendants.

No. 96 C 236.

United States District Court, N.D. Illinois, Eastern Division.

March 21, 1997.

---

Craig Edgar Anderson, Charles James Corrigan, Jacobson, Brandvik & Anderson, Chicago, IL, Joseph E. Tighe, Richard J.

Prendergast, Ltd., Chicago, IL, William J. Harte, William J. Harte, Ltd., Chicago, IL, for plaintiffs.

Raymond Hugo Groble, III, Robert Thomas Zielinski, Ginger G. Mayer, Ross & Hardies, P.C., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiffs [1] seek to recover severance pay from their former employers, Union Pacific Railroad Company, Union Pacific Corporation, and Chicago and North Western Railway, ("Union Pacific" or "defendants").[2] The complaint alleges a breach of contract and a breach of the duty of good faith and fair dealing. Defendants move the court to grant their motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the court grants defendants' motion to dismiss.

### Background

Plaintiffs are residents of either Illinois or North Carolina. Defendant Union Pacific Railroad Company is a Utah corporation, and has its principal place of business in Nebraska. Defendant Union Pacific Corporation is a Delaware corporation, and has its principal place of business in Pennsylvania. In March, 1995, Chicago and North Western Railway Company merged with Union Pacific Railroad Company, and the sole surviving corporation was Union Pacific. Accordingly, the court has jurisdiction pursuant to federal diversity jurisdiction. 28 U.S.C. § 1332.[3]

The following facts are taken from plaintiffs' complaint. Defendant Chicago and North Western Railway Company employed plaintiffs around March, 1995. (Compl. at ¶ 1.) Union Pacific Corporation, Union Pacific Railway Company, Chicago and North West-

ern Railway Company entered into a merger agreement around March, 1995. (*Id.* at ¶ 2.) Due to the merger, Chicago and North Western Railway became a wholly-owned subsidiary of Union Pacific Corporation. *Id.* Under the terms of the merger agreement, non-union employees, of Chicago and North Western Railway Company, below the level of Senior Vice–President, were invited to participate in a Voluntary Force Reduction Program ("VFRP" or "Program"), a resignation program with an enhanced severance package. (*Id.* at ¶ 3.)

Plaintiffs were eligible to participate in the Voluntary Force Reduction Program because they were non-union employees, under the level of Senior Vice–President. (Pls.' Ex. A.)[4] The terms of the VFRP were explained to plaintiffs and other eligible employees in a letter from Union Pacific Railroad Company's Vice President of Human Resources, that referenced attached documents and schedules, ("VFRP letter"). *Id.* The first page of the VFRP letter was printed on Union Pacific Railroad Company letterhead and included the company's return address in Nebraska. *Id.* The VFRP letter outlined the schedule of severance payments participants in the Voluntary Force Reduction Program would receive. (Compl. at ¶ 6.) The VFRP letter instructed eligible employees, willing to terminate their employment for enhanced severance payments, to fill out an application to participate in the Voluntary Force Reduction Program as well as to sign a "General Release and Covenant Not to Sue." (Id. at ¶ 8.) According to the VFRP letter, the application and the release were due by June 15, 1995. *Id.*

Plaintiffs each executed a release and completed an application, and submitted both by the deadline. (*Id.* at ¶ 9.) The VFPR letter detailing the terms of the Voluntary Force Reduction Program stated: "[i]f you apply,

---

**1.** The reference "plaintiffs" includes Lynn Cobb–Alvarez, Amy Long, Don Fredbeck, Bryan Madsen, Larry Meyne, Gary Turner, Jack Parker, Robert Meyer, and Larry Whitney.

**2.** The references "Union Pacific" and "defendants" include Union Pacific Corporation, Union Pacific Railroad Company, and Chicago and North Western Railway Company.

**3.** Defendants' Notice of Removal establishes the diversity of the parties. This diversity has not been contested by plaintiffs.

**4.** Plaintiffs' attachment of a copy of the VFRP letter to their complaint is an adoption of the letter as part of the pleadings. Fed.R.Civ.P. 10(c).

your application can be denied because of business necessity." (Pls.' Ex. A). Additionally, under a heading entitled 'Approval,' the VFPR letter outlined: "[a]pplications to participate in the VFRP must have approval of the Vice President–Human Resources, Union Pacific Railroad.... Requests to participate in the VFRP will be granted or denied on the basis of business needs." *Id.* Agents of defendants represented to plaintiffs that their applications would be honored and they would be given the severance packages detailed in the VFRP letter, unless Union Pacific required their continued employment. (Compl. at ¶ 12.) Defendants' agents told plaintiffs that Union Pacific would not use the "business need" clause to opt out of terminating the plaintiffs' employment under the VFRP, unless particular employees were necessary to continue operating the defendants' railroad businesses. (*Id.* at ¶ 12.)

Plaintiffs' applications were rejected by Union Pacific, and instead plaintiffs were offered continued employment in new jobs that did not match their skills, experience, and training. (*Id.* at ¶ 18). Plaintiffs were all subsequently terminated without the severance packages detailed in the VFRP after they rejected the jobs offered. (*Id.* at ¶ 19.) Plaintiffs claim that they are entitled to receive the severance packages, as well as other termination benefits, detailed in the Voluntary Force Reduction Program. (*Id.* at ¶¶ 20–21.) Plaintiffs allege a breach of contract and a breach of the duty of good faith and fair dealing. (*Id.* at ¶ 17.)

### *Analysis*

#### A. Standard of Review

Union Pacific moves the court to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P 12(b)(6). A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Demitropoulos v. Bank One Milwaukee, N.A.,* 915 F.Supp. 1399, 1406 (N.D.Ill.1996) (citing *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990)). Therefore, the court accepts as

true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *Colfax Corp. v. Illinois State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir. 1996) (citation omitted). The court will dismiss a claim only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Colfax,* 79 F.3d at 632 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

#### B. Choice of Law

 The parties do not dispute that Illinois law controls this diversity suit.[5] If neither party raises the issue of a conflict of law, the court may apply the law of the state in which it is situated. *See GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.,* 64 F.3d 1112, 1115 n. 6 (7th Cir.1995) (citing *Employers Ins. v. Bodi–Wachs Aviation Ins. Agency, Inc.,* 39 F.3d 138, 141 n. 2 (7th Cir.1994)). If the parties did dispute the appropriate choice-of-law, this federal court, due to its diversity jurisdiction, would look to the forum state's choice-of-law rules in order to decide which state's substantive law will be employed to rule on the motion to dismiss. *Hystro Products, Inc. v. MNP Corp.,* 18 F.3d 1384, 1387 (7th Cir.1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)).

 In contract actions, Illinois courts apply the "most significant contacts" test, as outlined in **Restatement (Second) of Conflicts** § 188 (1971). *CSX Transp., Inc. v. Chicago and North Western Transp. Co.,* 62 F.3d 185, 188–89 (7th Cir.1995). The factors considered under the "most significant contacts" test include "the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicil[e], residen[ce], place of incorporation and business of the parties." *Wildey v. Springs,* 47 F.3d 1475, 1481–83 (7th Cir.1995) (quoting *Palmer v. Beverly Enter.,* 823 F.2d 1105, 1109–1110 (7th Cir.1987)).

---

**5.** In their pleadings, the parties cite only to Illinois case law and Seventh Circuit decisions applying Illinois law.

■ In this case, the parties were located in different states and communications were sent in writing by mail. The alleged offer, the Voluntary Force Reduction Program letter, included no choice-of-law provision. The only relevant state referred to in the VFPR letter was Nebraska.[6] Plaintiffs received the alleged offer while domiciled, residing, and/or working in either North Carolina or Illinois. Plaintiffs completed applications and executed legal releases in acceptance and consideration of the alleged offer. Therefore, the court finds that these actions took place in plaintiffs' domiciles, namely, either North Carolina or Illinois. Plaintiffs were employed by Chicago and North Western Railroad, a company that did significant business in Illinois until it was acquired in the merger by Union Pacific Railroad Company.[7] Union Pacific Railroad Company is a Utah corporation, but has its principle place of business in Nebraska. Finally, Union Pacific's agents made parol statements explaining the Program to eligible employees in attendance at a meeting in Chicago, Illinois. Based on these facts, this court finds that substantive Illinois law governs this contract dispute under the "most significant contacts" test.

### C. Offer or Invitation to Make an Offer

The issue before the court is whether the letter from Union Pacific detailing the enhanced severance plan was an offer to the corporation's eligible employees, or whether it was merely an invitation to make an offer. Plaintiffs claim a valid contract exists because they accepted Union Pacific's offer, as outlined in the VFRP letter, for severance pay, and in exchange they volunteered to leave their jobs and released Union Pacific from any liability. Defendants deny that a contract exists, arguing that the letter that plaintiffs construe as an offer was merely an invitation to make an offer. Plaintiffs seek damages for both breach of contract and breach of the duty of good faith and fair dealing.

■ Under Illinois law, an employee may enjoy contractual rights stemming from an employer's policy statements. *Doe v. First Nat'l Bank of Chicago*, 865 F.2d 864, 872 (7th Cir.1989). However, an employer is not required to award severance pay unless the obligation arises from an employment contract. *Stacey v. Ins. Corp. of Ir.*, 189 Ill.App.3d 229, 136 Ill.Dec. 697, 707, 545 N.E.2d 221, 231 (1 Dist.1989), (citing *Arado v. General Fire Extinguisher*, 626 F.Supp. 506 (N.D.Ill.1985)). Fundamentally, an employment contract requires the traditional elements of a contract: an offer, an acceptance, and consideration. *Doe*, 865 F.2d at 872 (citing *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987)).

■ In order to properly plead breach of contract under Illinois law, initially, a plaintiff must allege facts that support a reasonable inference that a contract in fact existed between the plaintiff and defendant. *Bercoon, Weiner, Glick and Brook v. Mfgs. Hanover Trust Co.*, 818 F.Supp. 1152, 1155 (N.D.Ill.1993) (citing *Berg and Assoc., Inc. v. Nelsen Steel & Wire Co.*, 221 Ill.App.3d 526, 162 Ill.Dec. 779, 784, 580 N.E.2d 1198, 1203 (1 Dist.1991), *appeal denied*, 143 Ill.2d 635, 167 Ill.Dec. 396, 587 N.E.2d 1011 (1992)). Whether a contract exists under Illinois law depends on the parties' intent, or more precisely, their outward manifested expression of intent. *Conn. Gen. Life Ins. Co. v. Chicago Title and Trust Co.*, 714 F.2d 48, 50 (7th Cir.1983). "[I]ntent must be determined solely from the [written] language used when no ambiguity in its terms exists." *Empro Mfg. Co., Inc. v. Ball–Co Mfg., Inc.*, 870 F.2d 423, 425 (7th Cir.1989) (quoting *Schek v. Chicago Transit Authority*, 42 Ill.2d 362, 247 N.E.2d 886, 888 (1969)).

■ First, plaintiffs must prove that defendants made them an offer. "The test

---

**6.** Both the sender of the letter, Union Pacific Railroad Company's Vice President of Human Resources, and the officer responsible for processing employees applications for the Program, a manager in Union Pacific Railroad Company's Employee Benefits Department, had return addresses in Nebraska.

**7.** The parties did not include Chicago and North Western Railroad's place of incorporation or principle place of business in their pleadings. The court, however, presumes CNW's contact with Illinois based on reasonable belief.

for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the [offeror]." *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1229 (7th Cir.1995) (citing *McCarty v. Verson Allsteel Press Co.*, 89 Ill.App.3d 498, 44 Ill.Dec. 570, 577, 411 N.E.2d 936, 943 (1980)).[8] In other words, an offer existed if the purported offeree "reasonably [could] have supposed that by acting in accordance with it a contract could be concluded." 1 **Samuel Williston, Williston on Contracts** § 4.7 (4th ed.1990). However, a mere "manifestation of *willingness* to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." **Restatement (Second) of Contracts** § 26 (1981) (emphasis added).[9] A party can prevent his suggestion from being treated as an offer by using "suitable language conditioning the formation of a contract on some further step ... such as approval by corporate headquarters." *Architectural Metal Sys., Inc.*, 58 F.3d at 1230.

▪ The issue before the court is whether the letter from Union Pacific detailing the enhanced severance plan was an offer to the corporation's eligible employees, or whether it was merely an invitation to make an offer. If the letter is construed as an offer, plaintiffs' applications in response to the letter constitute acceptances, and that their promises to quit and release any claims against defendants are consideration. Accordingly, a valid and enforceable contract exists. If the letter is construed as a mere invitation to make an offer, plaintiffs' applications are offers to Union Pacific. The corporation's offer of alternative jobs to plaintiffs was a counter-offer and, accordingly, not an acceptance of the plaintiffs' offer to voluntarily terminate their jobs and release any legal claims against the corporation in exchange for the severance package.

The Voluntary Force Reduction Program letter was not an offer. Eligible employees of Union Pacific were encouraged to volunteer to quit in exchange for the severance packages. However, their participation in the Program was subject to the approval of Union Pacific's Vice President of Human Resources. The VFRP letter cannot be construed as an offer because further assent from Union Pacific was required to consummate a termination agreement. Plaintiffs could not have reasonably thought Union Pacific's receipt of their applications by the deadline would conclude the agreement.

The necessity of the purported offeror's further approval undermines the inference that an offer exists. In *Quaker State Mushroom, Co., Inc. v. Dominick's Finer Foods, Inc.*, 635 F.Supp. 1281 (N.D.Ill.1986), the validity of a price quotation was subject to the vendor's confirmation of the rate, and was therefore, not an offer. The *Quaker* court reasoned, "it must reasonably appear from the price quotation that assent to the quotation is all that is needed to ripen the offer into a contract." *Id.* at 1284 (citations omitted).

The VFPR letter stated in unambiguous language: "[i]f you apply, your application can be denied because of business necessity." (Pls.Ex.A.) It also said, under the heading, 'Approval,': "[a]pplications to participate in the VFRP must have approval of the Vice President–Human Resources, Union Pacific Railroad ... Requests to participate in the VFRP will be granted or denied on the basis of business needs." *Id.* There is no disagreement that plaintiffs' applications to terminate their employment had to be approved by Union Pacific before severance pay would be awarded. Plaintiffs could not have reasonably believed that by merely returning their applications by the deadline that they would

---

**8.** "So long as it is reasonably apparent that some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer." 1 **Arthur Corbin, Corbin on Contracts** § 1.11 (rev.ed.1993).

**9.** "This section deals ... with the case where the actor intends to make a bargain in the future, but only if he makes some further manifestation of assent. If the addressee of a proposal has reason to know that no offer is intended, there is no offer even though he understands it to be an offer." **Restatement (Second) of Contracts**, Comment to § 26 (1981).

automatically be enrolled in the Voluntary Force Reduction Program, in light of the clear language in the VFPR letter conditioning acceptance into the Program upon the further assent of the Vice–President of Human Resources.

### D. Parol Evidence

 The parol evidence rule bars the admissibility of prior or contemporaneous statements which contradict a fully or partially integrated agreement. *Merk v. Jewel Food Stores,* 945 F.2d 889, 892 (7th Cir.1991) (citing **Restatement (Second) of Contracts** § 215). An agreement is fully integrated if it is "intended by the parties to be a complete expression of their agreement;" parol evidence may not be introduced when such an agreement exists. *Calder v. Camp Grove State Bank,* 892 F.2d 629, 632 (7th Cir.1990). A partially integrated writing may be supplemented, but not contradicted, by extrinsic evidence of prior or contemporaneous statements. *Merk,* 945 F.2d at 893.

 The court will consider evidence of Union Pacific's agents' parol statements because the VFPR letter was not a fully integrated document. Instead, it was a unilateral memo detailing the Program in general terms. Plaintiffs point to certain Union Pacific agents' oral representations assuring them that eligible employees would only be rejected for participation in the Program if Union Pacific needed their skills. Plaintiffs claim that, according to these agents' representations, Union Pacific could reject their applications only if there were a "business need" for their continued employment in a different capacity following the merger between Chicago and North Western Railway and Union Pacific.

In *Apothekernes,* a party's agent purportedly made oral statements promising that the requisite board approval was a formality. The Seventh Circuit found no contract existed for the sale of corporate assets because the letter of intent outlined that negotiations had to be approved by the seller's board of directors, despite the parol evidence. *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chemical Group, Inc.,* 873 F.2d 155, 158 (7th Cir.1989). Apothekernes

argued that IMC's agent assured them that IMC's board would approve the deal, however the Seventh Circuit concluded that the language in the letter of intent, referring to board approval, should have put Apothekernes "on notice that any promises by [IMC's agent] of rubber-stamp board approval were not to be taken seriously." *Id.* at 158.

Similarly, in this case, the parol evidence does not change the plain language of the VFPR letter, nor does it make the clear condition of further approval by the Vice–President ambiguous. If anything, the parol evidence merely reasserts the necessity of the approval to plaintiffs' participation in Program. Despite the court's consideration of the parol statements, it does not find that the condition of final approval of the Director of Human Resources was waived or undermined by any purported parol statements made to plaintiffs.

### E. Good Faith and Fair Dealing

 Defendants also move to dismiss plaintiffs' claim for breach of the duty of good faith and fair dealing. This implied covenant is imputed into every contract under Illinois law, but a breach of good faith and fair dealing does not create an independent cause of action separate from the breach of contract claim. *Industrial Specialty Chem., Inc. v. Cummins Engine Co. Inc.,* 902 F.Supp. 805, 811 (N.D.Ill.1995) (citing *LaScola v. U.S. Sprint Comm.,* 946 F.2d 559, 565 (7th Cir.1991)). The implied duty is used primarily as a construction tool in determining the parties' intent; "vague notions of fair dealing do not form the basis for an independent tort." *Wolf v. Fed. Republic of Germany,* 95 F.3d 536, 543 (7th Cir.1996) (quoting *Anderson v. Burton Assocs., Ltd.,* 218 Ill.App.3d 261, 161 Ill.Dec. 72, 76, 578 N.E.2d 199, 203 (1 Dist.1991)). Any breach of the implied covenant of good faith and fair dealing must be encompassed in the claim of breach of contract. *Banco del Estado v. Navistar Int'l Transp. Corp.,* 942 F.Supp. 1176, 1182 (N.D.Ill.1996) (citations omitted). Additionally, there is no implied duty of good faith and fair dealing during contract negotiations. *See A/S Apothekernes Laboratorium*

*for Specialpraeparater,* 873 F.2d at 159, 160 n. 2.

No contract existed with respect to the enhanced severance benefits, therefore Union Pacific did not owe a duty of good faith and fair dealing to plaintiffs. In *Industrial Specialty,* the court explained the implied duty stems from the existence of a contract. *Industrial Specialty Chem., Inc.,* 902 F.Supp. at 811. In this case, due to the initial lack of an offer, no action for breach of contract lies, therefore, the count alleging a breach of the implied covenant of good faith and fair dealing is also dismissed since it has no independent basis.

It is unfortunate Union Pacific apparently did not have a real "business need" in retaining plaintiffs because they were offered jobs that were outside their fields of expertise and training, however the court will not replace its own business judgment for that of defendants. In *LaScola,* an employee sued his former employer for discharging him, alleging a breach of contract and violation of the duty of good faith and fair dealing. *LaScola,* 946 F.2d at 561. The Seventh Circuit explained that it is incongruous to apply the duty of good faith and fair dealing to the right of an employer to discharge an employee for a "good reason, a bad reason, or no reason" at all, in the case of an 'at will' employment relationship. *Id.* at 565. Analogously, plaintiffs were 'at will' employees who could be discharged at any time. Union Pacific did not owe a duty of good faith and fair dealing to plaintiffs.[10]

### Conclusion

For the reasons set forth above, the court grants defendants' motion to dismiss plaintiffs' complaint.

---

**10.** " '[I]n a business transaction both sides presumably try to get the best of the deal ... no legal rule bounds the run of business interest. So one cannot characterize self-interest as bad faith. No particular demand in negotiations could be termed dishonest, even if it seemed outrageous to the other party. The proper recourse is to walk away from the bargaining table, not to sue for bad faith in negotiations.' " *LaSalle Nat'l Bank v. Metro. Life Ins. Co.,* 18 F.3d 1371, 1375 (7th Cir.1994) (quoting *A/S Apothekernes Laboratorium,* 873 F.2d 155).